UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NIKOL SNEZANA GEROU
and KENNETH ROY GEROU,

        Petitioners,

                                 Case No. 25-cv-1160-pp

   v.

VIRGINIA GEORGE, TITANIA WHITTEN
and UNITED STATES,

        Respondents.

---

**ORDER DENYING MOTION TO DISMISS ADVERSARY PROCEEDING
(DKT. NO. 17), SCREENING MANDAMUS PETITION (DKT. NO. 1) AND
DISMISSING PETITION FOR FAILURE TO STATE A CLAIM, DENYING AS
MOOT MOTION FOR SERVICE BY THE U.S. MARSHALS SERVICE
(DKT. NO. 5), DENYING AS MOOT RESPONDENTS' MOTIONS TO DISMISS
(DKT. NOS. 9, 14, 27), DENYING MOTION TO WITHDRAW REFERENCE
(DKT. NO. 20) AND DISMISSING CASE**

---

On August 5, 2025, the petitioners—representing themselves—filed a
document titled "Verified Petition for Mandamus to Compel Specific
Performance of Equitable Trust Duties." Dkt. No. 1. Ten days later, the court
received from the petitioners an amended petition seeking a writ of mandamus
to compel the trustee in their bankruptcy case to perform certain actions and
to void the petitioners' mortgage contract. Dkt. No. 1. Each of the respondents
has filed a motion to dismiss the petition. Dkt. Nos. 9, 14, 27. The court has
received motions from the petitioners asking for service by the U.S. Marshals,
dkt. no. 5, to dismiss the adversary proceeding, dkt. no. 17, and to withdraw
the reference, dkt. no. 20. The court also received from the petitioners
documents titled "Petition Demanding Proof of Origination of Funds Via This

1

'Dead-Horse Petition,'" dkt. no. 23, and "Petition to Reverse Bankruptcy Court Ruling and to Disqualify Alleged Creditor for Lack of Standing," dkt. no. 24.

Because this Article III court does not have the power to issue a writ of mandamus against these respondents, the court will dismiss the petition and this case.

## I.    Background

###    A.    Filings

Between July 2025 and October 2025, the petitioners filed four civil lawsuits in this Article III court, as well as a petition for bankruptcy relief under Chapter 7 and two related adversary proceedings in the bankruptcy court. In re Gerou, *et al.*, Case No. 25-24068 (Bankr. E.D. Wis.) (filed July 17, 2025); Gerou, *et al.* v. George, *et al.*, Case No. 25-cv-1160 (E.D. Wis.) (filed August 5, 2025); Gerou, *et al.* v. George, *et al.*, Adv. No. 25-2114 (Bankr. E.D. Wis.) (filed August 29, 2025; closed Nov. 4, 2025); Gerou v. Nelnet, Adv. No. 25-2115 (Bankr. E.D. Wis.) (filed September 24, 2025); Gerou, *et al.* v. Marine Credit Union, *et al.*, Case No. 25-cv-1569 (E.D. Wis.) (filed October 14, 2025); Gerou, *et al.* v. Kaufman, Case No. 25-cv-1592 (E.D. Wis.) (filed October 16, 2025); Gerou, *et al.* v. Whitten, Case No. 25-cv-1593 (E.D. Wis.) (filed October 16, 2025). All the petitoners' civil cases relate to matters in their bankruptcy case. It appears that because the petitioners have so many pending cases, and in two different courts, they are not always clear on which documents to file in which case or with which court. To clarify the record, the undersigned will review the filings in this case.

The court opened this case on August 5, 2025, upon receiving a document titled "Verified Petition for Mandamus to Compel Specific Performance of Equitable Trust Duties." Dkt. No. 1. This document named only

Virginia George as a respondent, id. at 1; it was signed by both Nikol and Kenneth Gerou, id. at 3.

Ten days later, on August 15, 2025, the court received four documents from the petitioners. First, it received a document titled "Verified Petition for Mandamus to Compel Specific Performance of Equitable Trust Duties." Dkt. No. 3. This document, unlike the petition received on August 5, names as respondents Virginia George, Titania Whitten "and all successors, United States." Id. at 1. The document was signed by both Nikol and Kennth Gerou. Id. at 3. The clerk's office treated this as an amended petition for a writ of mandamus.

The second document the court received on August 15, 2025 was an "Emergency Motion" asking this district court to order the U.S. Marshals Service to serve the petition; the petitioners asked the court to "shorten" the time for such service "in light of an imminent bankruptcy-court hearing next week on creditor's **Motion for Relief from the Automatic Stay**." Dkt. No. 5 at 1 (emphasis in original). This document has a line for a signature, but that line is blank. Id. at 3. It appears that Nikol Gerou signed the certificate of service. Id.

The third document the court received from the petitioners on August 15 was a document titled "Complaint to Enforce Assignment of Right and delegation of Performance due to Payment to the United States." Dkt. No. 4. The document appears to have been signed by both Nikol and Kenneth Gerou. Id. at 2. The first line of the caption of this document reads, "For the Bankruptcy Court, Eastern District of Wisconsin" and refers to the bankruptcy court's jurisdiction over adversary proceedings. Id. at 1. This document states that the petitioners are "due performance by the United States because

3

complainant has made a lawful assignment to the United States in Reliance on Title 50/CHAPTER 53, Trading with the enemy act, provision §4305(A)(b)(B)(2), and is due performance under §2-210." Id. at 1. The petitioners filed an identical document in the bankruptcy court, opening an adversary proceeding in the bankruptcy case. See Gerou, *et al.*, Adv. No. 25-2114 (E.D. Wis.).

Finally, the court received on August 15 a declaration from Nikol Gerou in support of the emergency motion asking the court to direct the Marshals to serve the petition. Dkt. No. 6.

On September 8, 2025, respondent Virginia George—the initially-appointed Chapter 7 panel trustee assigned to the petitioners' bankruptcy proceeding—moved to dismiss the mandamus petition that began this district court case for lack of jurisdiction and for failure to state a claim, arguing that this court cannot issue a writ of mandamus compelling her to act because she is not an officer or employee of the United States. Dkt. No. 10 at 7–8. On September 10, 2025, respondent Titania Whitten—who succeeded George as the appointed panel trustee after George resigned—filed motion to dismiss the mandamus petition, adopting George's arguments. Dkt. No. 14.

On September 24, 2025, this district court received three documents from the petitioners. The first was a document titled "Motion to Dismiss Adversary Proceeding." Dkt. No. 17. The petitioners stated that they "filed this adversary proceeding in this Court" but since had "determined that the matters raised belong in the bankruptcy court, and Plaintiff does not wish to pursue this adversary in the present forum." Id. at ¶1. But the petitioners went on to state that "Plaintiff's separately pending Petition for Writ of Mandamus, Case No. [Mandamus Case Number], is not dismissed, altered, stayed, or affected in

4

any way by this Motion. The mandamus petition remains fully active and pending before this Court." Id. at ¶3 (brackets in original).

The second document was titled "Notice Regarding Dismissal of Federal Adversary Proceeding and Pending Mandamus Petition;" the first two lines of the caption of this document read "UNITED STATES BANKRUPTCY COURT Eastern District of Wisconsin." Dkt. No. 18. The document is signed only by Nikol Gerou. Id. It states that "Debtor" had filed an adversary proceeding "in the United States District Court, Case No. 25-cv1160," that the "Debtor" had filed a motion to dismiss, and that the notice was being "provided to ensure the bankruptcy record accurately reflects the status of related proceedings." Id.

The third document received on September 24 was a second "Notice Regarding Pending Mandamus Petition," again naming the bankruptcy court in the caption. Dkt. No. 19. Again, the first two lines of the caption of this document read, "UNITED STATES BANKRUPTCY COURT Eastern District of Wisconsin," but the caption lists the case number for this district court case— Case No. 25-cv-1160. Id. at 1. The document is signed only by Nikol Gerou, who identifies herself in the signature block as "Debtor, Pro Se." Id. at 2.

On October 3, 2025, this court received five documents from the petitioners. First, the court received a document titled "Petition and Motion to Withdraw the Reference." Dkt. No. 20. The petitioners asked the court to withdraw the reference of their bankruptcy case from the bankruptcy court, arguing that the resolution of their case "requires substantial and material interpretation of federal law outside Title 11." Id. at ¶7. Although the caption of this document lists the district court, it provides the name and case number of their *bankruptcy* case (Case No. 25-24068) and refers to the petitioners as "Debtors." Id. at 1. The court also received from the petitioners a "Notice of

Motion to Withdraw the Reference;" the first two lines of this document read "UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF WISCONSIN." Dkt. No. 21. The notice is addressed to "All Creditors and Parties in Interest." Id. at 1. It is not signed.

The third document the court received 3 was titled "Notice and Petition to Withhold Consent to Magistrate-Judge Disposition." Dkt. No. 22. The caption of this document states that the case is "[o]n appeal from the United States Bankruptcy Court, Case No. 25-24068, District-Court Civil Case No. [TBD]." Id. at 1. It lists Marine Credit Union as the defendant.[1] Id.

The fourth document the court received was titled "Petition Demanding Proof of Origination of Funds Via This 'Dead-Horse Petition.'" Dkt. No. 23. Again, this document contains the district court's name in the caption but lists the petitioners' bankruptcy case number and refers to the petitioners as "Debtors." Id. It appears to be signed only by Nikol Gerou. Id. at 6. The caption does not name any respondents or defendants; although the document addresses arguments to "you," it does not identify the "you" to whom the author is speaking. The document appears to argue that banks cannot lend money and that all loans legally are void. Id.

The fifth document the court received on October 3 was titled "Petition to Reverse Bankruptcy Court Ruling and to Disqualify Alleged Creditor for Lack of Standing." Dkt. No. 24. This document lists the district court in the caption,

---

[1] Marine Credit Union is not a defendant or respondent in this case. It is a defendant in Case No. 25-cv-1569. Nor is this case a bankruptcy appeal—it is the case the petitioners opened to pursue a writ of mandamus. Nor was there any need for the petitioners to file a separate document declining to consent to a magistrate judge's authority to issue a final decision. The petitioners filed a magistrate judge consent form when they opened this case. Dkt. No. 2. In this district, that form is the proper way to consent to, or to decline to consent to, a magistrate judge's authority to issue a final decision.

then reads, "Civil Action No. TBD *(Originally filed as Adversary Proceeding NO. ___ in Case No. ___)*." Id. at 1. Again, this document states that the case is "[o]n appeal from the United States Bankruptcy Court, Case No. 25-24068." Id. This document is signed only by Nikol Gerou. Id. at 2.

On October 24, 2025, respondent George filed an objection to the petitioners' October 3 filings. Dkt. No. 25. George argues that these filings do not relate to the mandamus petition and are not properly before the court. Id. at 1. The same day, respondent Whitten filed a request to join George's objection. Dkt. No. 26.

On October 31, 2025, in Case No. 25-cv-1569, the petitioners filed a "Motion to Strike Improper Filing of Virginia George and to Bar Further Participation as Non-Party." Case No. 25-cv-1569, Dkt. No. 4. They argue that the court should strike George's objection (the objection George filed in *this* case, Case No. 25-cv-1160) because "she is not a party to this civil action." Id. The petitioners are correct that George is not a party to Case No. 25-cv-1569. But George has not filed anything in Case No. 25-cv-1569. The petitioners seem to think the objection George filed in *this* case was filed in Case No. 25-cv-1569, which is the petitioners' case against Marine Credit Union. It was not. George's objection was filed in *this* case—Case No. 25-cv-1160—the case in which she *is* a party. See Dkt. No. 25. The court will not rule on the motion in this order, because it was not properly filed in this case.

On December 10, 2025, the United States filed a motion to dismiss this petition for a writ of mandamus for lack of service and for failure to state a claim. Dkt. No. 27.

The petitioners appear to understand that the bankruptcy court is a separate court from this district court. Despite that apparent understanding,

7

they have filed documents in this district court that they addressed to the bankruptcy court. They appear to have attempted to file an "adversary proceeding" in this district court, but "adversary proceedings" are lawsuits filed in the *bankruptcy* court, in a *bankruptcy* proceeding. See Fed. R. Bankr. P. 7001, *et seq.* In some of the filings, the petitioners refer to themselves as "debtors"—that is a *bankruptcy* court term, used to describe someone who seeks *bankruptcy* relief from a *bankruptcy* court. The person who files a lawsuit in the *district* court is a plaintiff or petitioner. Several of the filings state that the case is "on appeal" from the bankruptcy court. But bankruptcy appeals are governed by Fed. R. Bankr. P. 8001, *et seq.*—there are required procedures for filing a bankruptcy appeal, and the petitioners have not followed those procedures. Finally, each of the cases the petitioners have filed, whether in bankruptcy court or in this district court, stands alone. The petitioners cannot file motions or documents relating to one case in another case.

The petitioners' decision to file multiple cases and multiple documents in two courts simultaneously has made it difficult—sometimes impossible—for this court to determine what relief the petitioners are seeking and from whom. It has made it difficult for the court to determine whether they are seeking relief that this district court can provide, or whether they are seeking relief that only the bankruptcy court can provide. The court has analyzed, and ruled on, only those motions related to the original relief the petitioners requested on August 5, 2025—their petition for a writ of mandamus.

B.    Motion to Dismiss Adversary Proceeding (Dkt. No. 17)

The petitioners filed a motion to dismiss the adversary proceeding. Dkt. No. 17. This motion is captioned with this district court case number (25-cv-1160), but there is no "adversary proceeding" in this court. At the time the

8

petitioners filed this motion, they had no other cases pending in this court. It is tempting to conclude that this was an error in terminology and that the petitioners intended to ask this district court to dismiss their petition for a writ of mandamus. If so, the court could grant that motion and there would be no need for it to address the petitioners' other motions. But the "motion to dismiss adversary proceeding" states that the petitioners' mandamus petition "is not dismissed, altered, stayed, or affected in any way by this Motion." Id. at ¶3. And again, there is no "adversary proceeding" in this district court for the district court to dismiss. As best the court can tell, the petitioners wish to proceed with their mandamus petition, so the court will deny the motion to dismiss the "adversary proceeding" (Dkt. No. 17) because there is nothing for the court to dismiss.

      C.    <u>Determining the Operative Petition</u>

There are multiple documents in this case that could be construed as a petition or complaint. The court has described the original, August 5, 2025 petition which named only Virginia George as a respondent. Dkt. No. 1. On August 15, 2025, the court received from the petitioners another petition—very similar to the first but adding Tatania Whitten and the United States as respondents. Dkt. No. 3. The clerk's office construed this as an amended petition for a writ of mandamus; this court agrees.

That same day, the court received a document titled "Complaint to Enforce Assignment of Right and delegation of Performance due to Payment to the United States." Dkt. No. 4. The "complaint" at Dkt. No. 4 was captioned for the bankruptcy court and also was filed in the bankruptcy court (resulting in the opening of an adversary proceeding in the bankruptcy court). Because these documents—the amended petition and the "complaint"—were received on

9

the same day and the "complaint" appears to be intended for the bankruptcy court, the court assumes the petitioners did not intend the "complaint" at Dkt. No. 4 to supersede their amended petition for writ of mandamus (Dkt. No. 3).

The petitioners may amend their petition for a writ of mandamus once as a matter of right; any further amendments require leave of court. See Fed. R. Civ. P. 15(a)(1). The petitioners have not requested leave to amend, so the amended petition filed on August 15, 2025 is the operative petition in this case. The court will not construe any subsequent documents as amending or adding to the petition.

## II. Screening the Petition

### A. Legal Standard

The petitioners have paid the statutory fee for filing this case. But "district courts have the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status." Rowe v. Shake, 196 F.3d 778, 783 (7th Cir. 1999); see also Rezny v. Wis. Dep't of Fin. Insts., Case No. 22-C-1285, 2022 WL 17551151 at *1 (E.D. Wis. Dec. 9, 2022) (stating that courts are free to screen a complaint for a self-represented plaintiff who has paid the full filing fee under 28 U.S.C. §1915(e)(2)). The court will exercise that authority here.

At the screening stage, the court must decide whether the petitioners have raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b); see also Tabb v. Jeffreys, Case No. 20-CV-00511, 2020 WL 3414616, at *1 (S.D. Ill. June 22, 2020) (applying §1915A screening standard to *pro se* petition for writ of mandamus). A document filed by self-represented litigants must be "liberally

10

construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). Similarly, a complaint filed by self-represented litigants, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id.

Although courts liberally construe their filings, self-represented litigants still must comply with Federal Rule of Civil Procedure 8, which requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To state a claim against the defendants, the complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663–64.

The petitioners are seeking mandamus relief under 28 U.S.C. §1361. That statute grants district courts original jurisdiction "of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. §1361. Mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." Cheney v. U.S. Dist. Ct. for D.C., 542 U.S. 367, 380 (2004) (internal quotation marks omitted). "[O]nly exceptional circumstances amounting to a judicial usurpation of power . . . or a clear abuse of discretion . . . will justify the invocation of this extraordinary remedy." Id. (quotation marks and citations omitted). The Seventh Circuit has provided the following guidance

11

for lower courts to use in determining whether a district court may issue a writ of mandamus:

> The Supreme Court has emphasized that "[t]he common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). If a plaintiff's allegations survive *Ringer*'s jurisdictional threshold, three elements must be met in order for the court to issue a writ: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; (3) no other adequate remedy available." *Burnett v. Bowen*, 830 F.2d 731, 739 (7th Cir. 1987).

Center for Dermatology and Skin Cancer, Ltd. v. Burwell, 770 F.3d 586, 590 (7th Cir. 2014). Federal courts cannot grant mandamus relief against private parties. See Syngenta Crop Prot., Inc. v. Drexel Chem. Co., 655 F. Supp. 2d 54, 62 (D.D.C. 2009); Dist. 2, Marine Eng'rs Beneficial Ass'n, Associated Mar. Officers, AFL-CIO v. Adams, 447 F. Supp. 72, 75 (N.D. Ohio 1977).

B.     The Petition

The petitioners state they are seeking a writ of mandamus to compel the respondents (two Chapter 7 panel trustees and the United States) to "perform clear, non-discretionary fiduciary and ministerial duties arising [from] a surrender of intangible personal property unto the trustee." Dkt. No. 3 at 1. The petitioners allege that on July 25, 2025, Sam Kauffman (an attorney who is not a party to this case) "filed a relief of automatic stay with the intention to take and claim the home of the plaintiff under a constructive trust and utilization of power of sale obtained through an unconscionable contract called a MORTGAGE." Id. at 2 ¶2. They allege that on August 5, 2025, they "executed and delivered all intangible personal property/Full Faith and Credit Certificates of Live Birth, which are incontestable guarantees." Id. at ¶1.

The petitioners assert that they have "no speedy adequate remedy at law" because their "rights are wholly equitable" and their bankruptcy trustee "must perform the duty of accounting of the intangible personal property of [the] plaintiffs to make a fair and equitable distribution of the property to which the plaintiff has the right of disposal." Id. at ¶3. The petitioners allege that they will suffer irreparable harm if "the attorneys are permitted to take the home of the plaintiffs who have 5 children and have filed bankruptcy with the intention of seeking discharge for a 'fresh start.'" Id. at ¶4. The petitioners assert that they are filing this petition "to protect the interest of the plaintiffs, the United States, who has priority of repayment before any other creditor and to obtain relief they are entitled to and by decree of the Change of Name." Id. at ¶5.

Under "Prayer for Relief," the petitioners ask the court issue to a writ of mandamus "compelling the trustee to apply the full faith and credit documents to the debt owed to the United States and Void the order for foreclosure by Sam Kauffman et al, and declare their mortgage and contract void." Id. at 3 ¶1. They ask the court to "[a]pply remaining funds from liquidated guarantee to other creditors" and "[r]eturn the surplus and remaining credits in the name of the plaintiffs to them." Id. at ¶¶2–3.

C.   Analysis

The petitioners named as respondents two private attorneys appointed as bankruptcy trustees and the United States. The bankruptcy court record shows that respondent Virginia George initially was appointed as the interim trustee for the petitioners' bankruptcy case. Case No. 25-24068-beh, Dkt. No. 2. On August 8, 2025, George resigned as trustee and the U.S. Trustee appointed respondent Titania Whitten as the successor interim trustee. Id., Dkt. Nos. 30, 30-1. As the statute makes clear, a district court has jurisdiction

13

to issue a writ of mandamus only against "an officer or employee of the United States or any agency thereof." Neither Virginia George nor Titania Whitten is an "officer or employee of the United States"—both are private attorneys who accept appointments as panel trustees in Chapter 7 cases. And the United States is not "an officer or employee of the United States or an[] agency thereof."

The petitioners may believe that bankruptcy trustees are officers or employees of the United States. There *are* trustees who are federal employees of the United States Department of Justice—they are called "U.S. Trustees." But one of the duties of a federally employed U.S. Trustee is to "establish, maintain, and supervise a panel of *private* trustees that are eligible and available to serve as trustees in cases under chapter 7 of title 11." 28 U.S.C. §586(a)(1) (emphasis added). Trustees George and Whitten are not United States trustees. They are private attorneys who were appointed to serve as trustees in the petitioners' bankruptcy case. They are not officers or employees of the United States. See, *e.g.*, Mohns, Inc. v. Lanser, 522 B.R. 594, 596 (E.D. Wis. 2015) ("Generally, Chapter 7 trustees are private parties, not employees of the federal government, and are appointed to serve on specific Chapter 7 cases by the United States Trustee."); Estate of Watter v. Fox, 71 F.4th 547, 553 (7th Cir. 2023) (recognizing that chapter 7 trustees "are not federal employees; they are private representatives appointed or elected to protect a bankruptcy estate."). The mandamus statute does not give this court jurisdiction to issue a writ of mandamus against George or Whitten.

The petitioners also named the United States as a respondent. Again, the court has jurisdiction to issue a writ of mandamus only against an officer or an

employee of the United States. It cannot issue a writ of mandamus against the United States generally.

For these reasons, the court must dismiss the petition. Although district courts generally give civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so "when 'it is certain' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). Here, amendment would be futile because the court has no jurisdiction to issue a writ of mandamus against the respondents. The court will dismiss this case without leave to amend.

### III. Petition Demanding Proof of Origination of Funds via This "Dead-Horse Petition"

Although the court is dismissing this case, there are several issues with the petitioners' "petition demanding proof of origination of funds via this 'dead-horse petition'" that the court must address. Dkt. No. 23. That document contains multiple direct quotes that do not appear in the cited cases. The petitioners state that "*Oates v. National Bank (1879)*: Explicitly states banks 'may only deal in negotiable instruments and lawful money.'" Dkt. No. 23 at 2. Oates v. National Bank, 100 U.S. 239 (1879) contains no such quote. National Bank v. Matthews, 98 U.S. 621 (1878) does not contain the statement that banks "cannot lend their credit to another." Bank of Augusta v. Earle, 38 U.S. 519 (1839) and Merchants' Bank v. State Bank, 77 U.S. 604 (1870) do not hold that a bank that lends credit is "acting beyond its charter," dkt. no. 23 at 3.

The petitioners also cite to multiple cases that the court could not locate in any legal database. The petitioners cite "*Farmers' & Mechanics' Bank v. Smith (1819)*" which does not appear to be an existing case. There *is* a Supreme

15

Court case from *1821* titled <u>Farmers' & *Merchants'* Bank of Pennsylvania v. Smith</u>, 19 U.S. 131 (1821). But that case does not contain any reference to "discounting notes" or "unlawful 'lending credit.'" The petitioners cite "*Commercial Bank of Cleveland v. Ely (1853)*," which again, does not appear to exist. The court located <u>Commercial Bank of Cleveland v. Iola</u>, 154 U.S. 617 (1875), which does not contain the quote "a bank can lend its money, not its credit." When the court tried to locate "*Glover v. Standard Oil Co.*, 65 N.E.2d 389 (Ind. 1946)," the citation led the court to <u>Cont'l Ill. Nat. Bank & Tr. Co. of Chicago v. Sever</u>, 65 N.E.2d 385 (Ill. 1946), which does not stand for the proposition that "an UNREBUTTED AFFIDAVIT STANDS AS TRUTH in commerce and law." Dkt. No. 23 at 6. Similarly, "*Richardson v. Fendler*, 47 Md. 349" led the court to <u>Mason v. Johnson</u>, 47 Md. 347 (1877), which again, does not discuss affidavits. Most concerning, the court was unable to locate *any* case with a similar name or date as the case "*Federal Reserve Bank of San Francisco v. United States (1919)*," which the petitioners directly quote multiple times.

In recent years, courts and the legal community have learned that generative artificial intelligence programs like ChatGPT regularly produce inaccurate or false case citations (often referred to as "hallucinated" cases) and that they misstate or misrepresent the law. <u>See</u> <u>In re Martin</u>, 670 B.R. 636, 646–49 (Bankr. N.D. Ill. 2025) (collecting cases discussing the proliferation of AI hallucinated cases and the risks of AI-assisted legal research). Courts across the country have imposed sanctions (both monetary and non-monetary) on attorneys and self-represented litigants for filing AI-generated documents that cite to nonexistent cases or misrepresent the law. <u>See</u> <u>id.</u>; <u>Glass v. Foley & Lardner LLP</u>, No. 24-CV-769, 2025 WL 3079280, at *1 (W.D. Wis. Nov. 4, 2025)

16

("The pitfalls of submitting court filings that contain hallucinated citations are obvious, and courts have sanctioned licensed attorneys and self-represented litigants alike for their failure to exercise diligence."); Davis v. Marion Cnty. Superior Ct. Juv. Det. Ctr., No. 24-CV-01918, 2025 WL 2502308, at *4 (S.D. Ind. Sept. 2, 2025) (reviewing monetary sanctions imposed on parties citing to nonexistent cases); Attaway v. Ill. Dep't of Corr., No. 23-CV-2091, 2025 WL 1101398, at *3 (S.D. Ill. Apr. 14, 2025) (warning self-represented plaintiff that future use of hallucinated citations may result in monetary sanctions).

When an attorney or self-represented party files a document in federal court, that attorney or party is certifying to the court that the legal contentions contained in it "are warranted by existing law." Fed. R. Civ. P. 11(b). "Carelessness, good faith, or ignorance are not an excuse for submitting materials that do not comply with Rule 11." Attaway, 2025 WL 1101398, at *2. Nor does their self-represented status relieve the petitioners of the obligation to ensure that their case citations and legal representations are accurate and are supported by valid precedent. Filing a document that contains citations to nonexistent cases or quotes language that does not appear in a cited case violates Rule 11 because it demonstrates that the filing party has not made a reasonable inquiry into the supporting law. If the petitioners file any more documents in any case in this district that contain citations to nonexistent cases or directly quote language that does not appear in a cited case—whether the document is AI-generated or not—they may be subject to monetary sanctions.

## IV. Remaining Motions

Because the court is dismissing the petition at screening, it need not address the respondents' motions to dismiss and will deny them as moot. The

17

court also will deny as moot the petitioners' motion to direct service by the U.S. Marshals.

The petitioners filed a motion to withdraw the reference of their entire bankruptcy case to the bankruptcy court. Dkt. No. 20. This motion was procedurally improper. Although Fed. R. Bankr. P. 5011(a) says that a motion to withdraw the reference must be *heard* by a district court judge, the motion initially must be filed in the bankruptcy court. See Fed. R. Bankr. P. 5005(a); Local R. 5011 (Bankr. E.D. Wis.) (stating that any motion to withdraw the reference must "be filed with the Clerk of the Bankruptcy Court," who then "will transmit the motion, all responses to the motion, and all replies to the Clerk of the District Court, who will assign a district court case number to the matter.") The presiding bankruptcy judge also may choose to make a report and recommendation to the district judge on a request to withdraw the reference. See Charmoli v. Aspen Am. Ins. Co., No. 23-CV-321, 2023 WL 3984590, at *2 (E.D. Wis. June 13, 2023) (quoting Matter of Vicars Ins. Agency, Inc., 96 F.3d 949, 954 (7th Cir. 1996)). The petitioners cannot tack a motion to withdraw the reference onto a civil case seeking a writ of mandamus. The court will deny the motion to withdraw the reference as improperly filed.

## V.    Conclusion

The court **DENIES** the petitioners' motion to dismiss adversary proceeding. Dkt. No. 17.

The court **ORDERS** that this case is **DISMISSED** for failure to state a claim. The clerk will enter judgment accordingly.

The court **DENIES AS MOOT** the petitioners' emergency motion to direct service by the U.S. Marshals. Dkt. No. 5.

18

The court **DENIES AS MOOT** Virginia George's motion to dismiss the petition. Dkt. No. 9.

The court **DENIES AS MOOT** Titania Whitten's motion to dismiss the petition. Dkt. No. 14.

The court **DENIES AS MOOT** United States' motion to dismiss the petition. Dkt. No. 27.

The court **DENIES** the petitioners' motion to withdraw the reference. Dkt. No. 20.

Dated in Milwaukee, Wisconsin this 18th day of December, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

19